Michael D. Currin, WSBA No. 14603  
Michael L. Loft, WSBA No. 8714  
Daniel J. Gibbons, WSBA No. 33036  
Witherspoon Kelley, PS  
422 W. Riverside, Suite 1100  
Spokane, WA 99201  
Phone: (509) 624-5265  
Fax: (509) 458-2717  
Email: mdc@witherspoonkelley.com  
Email: mll@witherspoonkelley.com  
Email: djg@witherspoonkelley.com  

Honorable Paul B. Snyder  
Hearing Date: 1/4/2011  
Hearing Time: 11:00am  
Location: Tacoma  
Response Date: 12/28/2010

UNITED STATE BANKRUPTCY COURT  
WESTERN DISTRICT OF WASHINGTON

| In Re: | No. 10-50029-PBS |
|---|---|
| CENTRALIA OUTLETS, LLC,<br><br>Debtor. | SUPPLEMENTAL OBJECTION OF STERLING SAVINGS BANK TO DEBTOR'S REQUEST FOR PROFESSIONAL FUND CARVEOUT |

Sterling Savings Bank ("Sterling") submits this Supplemental Objection to the Debtor's Emergency Motion for Authority to Use Cash Collateral (the "Cash Collateral Motion"). (Docket No. 10). This objection is limited to the "Professional Fund Carveout" or "Professional Fund" requested in the Cash Collateral Motion and is intended to supplement Sterling's earlier objection filed on December 28, 2010. (Docket No. 32). Sterling also relies on the Declaration of Michael Loft filed herewith.

SUPPLEMENTAL OBJECTION - 1  
S0257970

WITHERSPOON·KELLEY  
Attorneys & Counselors  
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265  
Spokane, Washington 99201-0300   Fax: 509.458.2728

Sterling objects as set forth below.

**A.    The Debtor Bears the Burden of Proof.**

Sterling does not consent to the use of its cash collateral for the Professional Fund Carveout, and reserves the right to object to at the final cash collateral hearing set for February, 3, 2011.  As a result, the Cash Collateral Motion may be granted only if Sterling is adequately protected.  11 U.S.C. § 363(c)(2) and (e).  The Debtor bears the burden of proving that Sterling will be adequately protected.  11 U.S.C. § 363(p)(1).  In light of the interim cash collateral order (Docket No. 24) there appears to be no dispute that Sterling has a valid, first position lien on the Debtor's cash collateral.

**B.    No Employment Application is Pending.**

The Debtor's Reply to Objection of Sterling Savings Bank to Debtor's Request for Professional Fund Carve-Out (Docket No. 34) seems to indicate that pleadings have been filed to employ Bush Stout & Kornfeld in some type of limited and temporary capacity.  However, as of January 3, 2011 the docket shows no such pleadings have been filed.  In other words, nothing has changed since the time when the Court declined to rule on the Debtor's request for the Professional Fund Carveout at the preliminary cash collateral hearing on December 10, 2010.[1]  The lack of an employment application is quite relevant to approval of the Professional Fund Carveout requested by the Debtor.  With no application pending, there has been no disclosure of

---

[1] It is unknown why the Debtor cited to FRBP 6004 in footnote 1 of its reply.  Rule 6004 concerns the use, sale and lease of property.  Also, the Court may recall that at the preliminary cash collateral hearing on December 10, 2010, Debtor's counsel stated that an employment application would be filed the following Monday.  Furthermore, LBR 2014-1(b) requires that the US Trustee approve an employment application, or that at least seven days have passed since service of the application on the US Trustee and that no objection has been received, <u>for ex parte</u> employment applications.  The Debtor was certainly free to submit an employment application on December 13, 2010 as represented by Mr. Day at the preliminary cash collateral hearing.

SUPPLEMENTAL OBJECTION - 2
S0257970



WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100      Phone: 509.624.5265
Spokane, Washington 99201-0300      Fax: 509.458.2728

the proposed terms of employment, no disclosure of the scope of services, no disclosure of any retainer, no disclosure of any proposed hourly rate, and no disclosure of actual and/or potential conflicts of interest. Without the disclosures mentioned above, the Debtor is essentially requesting that the Court make its determination in a vacuum, and essentially prime Sterling's collateral to fund professional fees. The Court should decline to do so in light of the inactivity in this case. Moreover, Sterling has received no indication as to the general outline of a reorganization plan, the Debtor's efforts to "lease up" the vacant space, or the Debtor's efforts to renew leases which expire in 2011. Decl. of Michael Loft, ¶ 4. Without this information, Sterling has no way of analyzing the impact of the Professional Fund Carveout on its lien.

**C. No Authority Supports Creation of a Separate Fund with Superpriority Over Existing Liens.**

The Cash Collateral Motion proposes depositing $25,000 per month into the Bush Strout & Cornfeld trust account up to $150,000, to pay, apparently all professional fees, including Debtor's counsel, Committee counsel, other professionals employed by either the Debtor or any Committee, and US Trustee quarterly fees. Sterling's replacement lien on cash collateral shall be subordinated to this fund. (See Cash Collateral Motion, p. 5).

No authority has been cited for the proposition that a creditor's valid, first position lien (or replacement lien) may be subordinated to administrative expenses, especially in the context of a preliminary cash collateral hearing. In fact, the Debtor's attempt to charge a lien against Sterling's collateral, without the making the necessary showing for a surcharge under Section 506(c), contradicts binding precedent. In re Cascade Hydraulics and Utility Service, Inc., 815 F.2d 546, 549 (9th Cir. 1987) ("Administrative expenses or the general costs of reorganization may not generally be charged against secured collateral. We allow payment of administrative

SUPPLEMENTAL OBJECTION - 3
S0257970

**WITHERSPOON·KELLEY**
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265
Spokane, Washington 99201-0300   Fax: 509.458.2728

Case 10-50029-BDL   Doc 36   Filed 01/03/11   Entered 01/03/11 17:08:23   Page 3 of 6

expenses from the proceeds of secured collateral when incurred primarily for the benefit of the secured creditor or when the secured creditor caused or consented to the expense.") (citations omitted). See also In re Tri-County Water Assn., 91 B.R. 547, 549 (Bankr. S.D. 1988) (As a general rule "interim debtor's attorney's fees may not be paid from an undersecured creditor's collateral.").

Furthermore, Sterling's research shows no court has authorized creation of a professional fee fund, with superpriority over existing liens. Rather, the cases provide administrative expenses may be paid out of cash collateral only if the creditor is adequately protected. See e.g., In re Proalert, LLC, 314 B.R. 436, 444-445 (9th Cir. B.A.P. 2004) (Upholding Bankruptcy Court's decision to allow payment of a retainer to a valuation expert and accountant from cash collateral, without complying with surcharge requirements of Section 506(c)). Furthermore, from the case law it appears that the proper time to determine whether the lender is adequately protected for payment of professional fees out of its cash collateral is at plan confirmation or in determining a fee application, and not at a preliminary cash collateral hearing. In re Coventry Commons Assocs., 149 B.R. 109, 114-15 (Bankr. E.D. Mich. 1992) (Rejecting argument that debtor cannot use cash collateral to pay professional fees so long as creditor is adequately protected, but denying confirmation of plan due to failure to explicitly state lien on rents would be retained); In re WBE Company, Inc., No. BK 06-800006, 2007 WL 4892121, at *1 (Bankr. D. Neb. December 21, 2007) (Granting fee application and allowing fees and expenses in context of fee application but holding "However, the debtor is not permitted to pay those fees

SUPPLEMENTAL OBJECTION - 4
S0257970

WK WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

and expenses from cash collateral until, and unless, the debtor can prove the bank's interest is adequately protected.").[2]

Sterling is not adequately protected here. The creation of the Professional Fund, with priority over Sterling's lien results in Sterling being the sole party responsible for payment of professional fees, and results in Sterling bearing all risk of payment for professional fees. If the market declines, if the Debtor is unable to lease up the remaining vacant space, if tenants do not renew their leases, or the Debtor experiences any other business problems, $150,000 of Sterling's collateral will be gone. The right to seek allowance of a priority claim under Section 507(b) is not an adequate substitute for subordinating Sterling's rights to its collateral and making Sterling bear all risk of funding professional fees. Furthermore, the Debtor's proposal contradicts the Bankruptcy Code's priority scheme. Tri-County Water Assn., 91 B.R. at 550 ("[I]t be improper to approve the payment of fees from the collateral to which [the secured lender] has precedence in this case. Although the Court is allowed discretion in deciding whether to award interim fees, in doing so it must make reference to the Code's priorities system.").

Sterling requests that the Professional Fund Carveout be denied, without prejudice. The proper time to determine whether or not professional fees may be paid out of cash collateral and whether Sterling is adequately protected is at confirmation or as part of a fee application. See Coventry Commons Assocs., 149 B.R. at 114-15; In re WBE Company, Inc., 2007 WL 4892121 at *1. A professional fund with superpriority over Sterling's lien in cash collateral does not

---

[2] The Court should also note that in Proalert the Bankruptcy Court declined to rule on the motion as it related to attorneys' fees until "ripe for determination." 314 B.R. 438. Furthermore, as to the retainer paid to the valuation expert and accountant, the Bankruptcy Court required the Debtor to replenish any funds used for such purpose within less than six weeks on a dollar for dollar basis. 314 B.R. 439.

SUPPLEMENTAL OBJECTION - 5
S0257970

comport with the applicable case law, the Code's priority scheme, and is not necessary. Assuming that the Debtor can in fact perform as set forth in its budget, tenants renew their leases, the Debtor maintains or increases its occupancy rate, and experiences no business set backs, cash will likely be available in the future for payment of professional fees assuming Sterling is adequately protected. Whether or not Sterling will be adequately protected to allow for payment of professional fees out of cash collateral in the future, is best determined in the future. In the meantime, presumably, the Debtor will abide by the current cash collateral order, and any final cash collateral order, and all excess cash over and above operating expenses and adequate protection payments will accrue and be retained by the Debtor.

**D.  Conclusion.**

Sterling requests that the Professional Fund Carveout be denied, without prejudice, for the reasons set forth above. The Debtor would be free to reapply for payment of professional fees in conjunction with plan confirmation or in connection with fee applications, when the issue is actually ripe and before the Court.

Dated this 3rd January, 2011.

WITHERSPOON KELLEY

By: */s/ Daniel J. Gibbons*
Michael L. Loft, WSBA No. 8714
Daniel J. Gibbons,    WSBA No. 33036
Attorneys for Sterling Savings Bank

SUPPLEMENTAL OBJECTION - 6
S0257970

**WITHERSPOON·KELLEY**
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

Case 10-50029-BDL    Doc 36    Filed 01/03/11    Entered 01/03/11 17:08:23    Page 6 of 6