The Honorable Brian Lynch
Chapter 11

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

In re

CENTRALIA OUTLETS, LLC,

        Debtor.

Case Nos. 10-50029

**DISCLOSURE STATEMENT FOR
DEBTOR'S AMENDED PLAN OF
REORGANIZATION
DATED MAY 20, 2011**

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS

I.    EXECUTIVE SUMMARY ................................................................ 1

    A.    Introduction................................................................................ 1

    B.    Definitions and Plan Supremacy ............................................... 2

    C.    Plan Materials ........................................................................... 2

    D.    Disclosure Statement Approval ................................................. 3

II.   DISCLAIMERS ........................................................................... 4

III.  THE DEBTOR'S HISTORY AND BUSINESS BACKGROUND ......................... 5

    A.    Centralia's Business and Management ...................................... 5

    B.    Centralia's Ownership................................................................ 6

    C.    Renovation of the Outlet Mall .................................................. 7

    D.    Prepetition Indebtedness to Sterling Savings Bank ................... 8

    E.    Events Leading to Bankruptcy Filing ....................................... 9

IV.   THE BANKRUPTCY CASE ........................................................ 10

    A.    Commencement of Bankruptcy Case. ....................................... 10

    B.    Funding for Postpetition Operations.......................................... 10

    C.    Debtor's Professionals................................................................ 10

V.    ASSETS AND LIABILITIES; SELECTED FINANCIAL INFORMATION......... 11

    A.    Assets......................................................................................... 11

    B.    Liabilities .................................................................................. 12

    C.    Selected Financial Information................................................... 12

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED MAY 20, 2011 – i

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Case 10-50029-BDL    Doc 126    Filed 05/20/11    Entered 05/20/11 12:44:51    Page 2 of 43

# TABLE OF CONTENTS
## (continued)

VI. DESCRIPTION OF THE PLAN ................................................................ 13

    A. Classification and Treatment of Claims and Interests. ................................ 13

        1. Classification Generally ................................................................. 13

        2. Unclassified Claims ..................................................................... 13

            a. Administrative Claims ......................................................... 13

            b. Professional Fees ............................................................... 14

            c. Priority Tax Claims ........................................................... 14

    B. Classified Claims ............................................................................... 15

        1. Class 1. Priority Claims .............................................................. 15

        2. Class 2. Sterling Secured Claim ................................................... 15

        3. Class 3. General Unsecured Claims ............................................... 17

        4. Class 4. Interests ........................................................................ 18

    C. Plan Funding. ................................................................................... 18

    D. Distributions to Creditors. ................................................................... 18

        1. Distributions Generally ................................................................ 18

        2. Undeliverable or Unclaimed Distributions. .................................... 19

        3. Time Bar for Cashing Distribution Checks. .................................... 19

        4. Limitations on Filing or Amending Claims After the Confirmation Date. ....................................................................... 20

        5. Transmittal of Distribution and Notices. ........................................ 20

        6. Disputed Claims .......................................................................... 21

    E. Executory Contracts and Unexpired Leases. ........................................... 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED MAY 20, 2011 – ii

76262-0001/LEGAL20442205.9

**TABLE OF CONTENTS**
**(continued)**

VII.    THE REORGANIZED DEBTOR ........................................................................... 22

    A.    Ownership and Management. ................................................................ 22

        1.    Management. ............................................................................ 22

    B.    Financial Projections. ........................................................................... 22

VIII.   VOTING ON THE PLAN .................................................................................. 22

    A.    Voting Eligibility. ................................................................................ 22

    B.    Voting Deadline. ................................................................................... 23

    C.    Acceptance by a Class of Claims. ........................................................ 24

    D.    Voting Procedures. ............................................................................... 24

        1.    Submission of Ballots. ............................................................ 24

        2.    Incomplete Ballots. ................................................................. 24

        3.    Withdrawal or Change of Votes. ............................................. 25

        4.    Voting Multiple Claims. .......................................................... 25

IX.     CONFIRMATION OF THE PLAN ................................................................... 25

    A.    Confirmation Hearing. .......................................................................... 25

    B.    Deadline for Objecting to Confirmation. ............................................. 26

    C.    Requirements for Confirmation. ........................................................... 26

        1.    Confirmation Requirements Generally. .................................. 26

        2.    Feasibility. .............................................................................. 26

        3.    Best Interests of Creditors. ..................................................... 27

    D.    Confirmation Over Objections of Dissenting Class. ........................... 28

        1.    Fair and Equitable. .................................................................. 28

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED MAY 20, 2011 – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

76262-0001/LEGAL20442205.9

## TABLE OF CONTENTS
### (continued)

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | a. | Secured Creditors | 28 |
|  |  | b. | Unsecured Creditors. | 29 |
|  |  | c. | Holders of Interests. | 29 |
|  |  | 2. | Unfair Discrimination. | 30 |
|  | E. | Effects of Confirmation. |  | 30 |
|  |  | 1. | Effect of Appeals | 30 |
|  |  | 2. | Revesting of Estate Property. | 30 |
|  |  | 3. | Discharge. | 31 |
|  |  | 4. | Exculpation. | 31 |
|  |  | 5. | Effect on Insurance Policies. | 31 |
|  |  | 6. | Injunction. | 32 |
| X. | ALTERNATIVES TO THE PLAN |  |  | 32 |
| XI. | RISK FACTORS |  |  | 32 |
| XII. | FEDERAL TAX CONSEQUENCES OF THE PLAN |  |  | 33 |
|  | A. | Scope of Discussion. |  | 34 |
|  | B. | Tax Consequences to Centralia and its Members |  | 35 |
|  | C. | Tax Consequences to Holders of General Unsecured Claims |  | 36 |
| XIII. | CONCLUSION AND RECOMMENDATION |  |  | 38 |

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED MAY 20, 2011 – iv

76262-0001/LEGAL20442205.9

Centralia Outlets, LLC (**"Centralia"** or **"Debtor"**) submits this Disclosure Statement in connection with its Amended Plan of Reorganization dated May 20, 2011 (the **"Plan"**). A copy of the Plan is attached hereto as <u>Exhibit A</u>. The purpose of this Disclosure Statement is to set forth information that (i) summarizes the Plan and alternatives to the Plan, (ii) informs creditors and Interest holders of the treatment to be afforded its claims against and equity interests in the Debtor under the Plan, (iii) assists creditors entitled to vote in making informed decisions as to whether they should vote to accept or reject the Plan, and (iv) assists the Court in determining whether the Plan complies with the provisions of Chapter 11 of the Bankruptcy Code and should be confirmed. The Plan describes how all Claims against and Interests in the Debtor will be resolved, and provides the means by which Centralia will be reorganized under the Bankruptcy Code.

## I. EXECUTIVE SUMMARY

### A. Introduction

On December 3, 2010 (the **"Petition Date"**), Centralia filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Washington (the **"Bankruptcy Court"** or the **"Court"**). Since then, the Debtor has managed its property and affairs as debtor in possession. This Disclosure Statement describes certain aspects of the Plan, the Debtor's business operations, significant events that occurred in the Bankruptcy Case, and related matters. This Executive Summary is intended solely as a summary of the distribution provisions of the Plan and certain matters relating to the plan confirmation process. For a more complete understanding of the Plan, you should read this Disclosure Statement and its exhibits, the Plan, and the Plan Supplement and the exhibits thereto in their entirety.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## B. Definitions and Plan Supremacy

All terms defined in the Plan will have the same meanings when used in this Disclosure Statement. Terms defined in this Disclosure Statement which are also defined in the Plan are solely for convenience and the Debtor does not intend to change the definitions of those terms in the Plan. Furthermore, in the event of any inconsistency between the Plan and this Disclosure Statement, the Plan will control. The exhibits attached to this Disclosure Statement are incorporated into and are a part of this Disclosure Statement.

## C. Plan Materials

The Debtor is mailing the following items to those creditors entitled to vote and certain other parties:

1. A copy of the "Order (I) Approving Disclosure Statement; (II) Fixing The Record Date; (III) Approving the Notice and Objection Procedures in Respect of Confirmation of the Plan of Reorganization; (IV) Approving Solicitation Packages and Procedures for Distribution Thereof; and (V) Approving the Form of Ballot and Establishing Procedures for Voting on the Plan of Reorganization," as entered by the Bankruptcy Court (the **"Disclosure Statement Order"**);

2. The Notice (I) of Approval of Disclosure Statement, (II) Establishment of Record Date, (III) Hearing on Confirmation of the Plan and Procedures for Objection to Confirmation of the Plan, and (IV) Procedures and Deadline for Voting on the Plan;

3. This Disclosure Statement as approved by the Court;

4. The Plan;

5. A ballot; and

6. A pre-addressed return envelope.

Pursuant to the terms of the Plan, certain Classes of Claims and Interests are entitled to vote. Enclosed with this Disclosure Statement are either (a) a ballot and a pre-addressed

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION DATED MAY 20, 2011 – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

76262-0001/LEGAL20442205.9

Case 10-50029-BDL    Doc 126    Filed 05/20/11    Entered 05/20/11 12:44:51    Page 7 of 43

envelope for returning the ballot, or (b) a notice of non-voting status. The voting procedures are set forth more fully in Article VIII of this Disclosure Statement. If you did not receive a ballot or if your ballot is lost or damaged, please contact Brian Jennings at Perkins Coie LLP, 1201 Third Avenue, Suite 4800, Seattle, WA 98101, by telephone at (206) 359-3679, by fax at (206) 359-4697, or by email at bjennings@perkinscoie.com. The Debtor believes that confirmation of the Plan is in the best interests of the Debtor and its creditors, and that creditors should vote to approve the Plan. You may vote on the Plan by returning the enclosed ballot to the address shown below prior to the Voting Deadline, which is **5:00 p.m. local time in Seattle, Washington on <u>Thursday, June 23, 2011</u>. Only Ballots received by the Voting Deadline can be counted for purposes of Plan confirmation.**

### D. Disclosure Statement Approval and Plan Confirmation

This Disclosure Statement has been approved by the Bankruptcy Court. Approval of this Disclosure Statement does not constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.

The Bankruptcy Court may confirm the Plan if it is approved by creditors holding more than two-thirds in amount and one-half in number of the Claims voted in each impaired Class of Claims under the Plan. Further, the Bankruptcy Court may confirm the Plan even in the absence of such creditor approval if the Court finds that the Debtor has satisfied certain "cramdown" standards in Section 1129(b) of the Bankruptcy Code.

**Objections, if any, to confirmation of the Plan must be filed with the Bankruptcy Court and a copy served on counsel to the Debtor such that the objection is received on or before 5:00 p.m. on <u>Thursday, June 23, 2011</u>. A hearing to consider confirmation of the Plan will be held in the United States Bankruptcy Court for the Western District of Washington, Tacoma Courthouse, 1717 Pacific Avenue, Tacoma,**

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 3

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 10-50029-BDL    Doc 126    Filed 05/20/11    Entered 05/20/11 12:44:51    Page 8 of 43

**Washington 98402, on July 1, 2011 at 9:00 a.m.** (the **"Confirmation Hearing"**).  The Confirmation Hearing may be adjourned from time to time without further notice except for the announcement of the adjourned date and time at the hearing on confirmation, or at any adjournment thereof.

## II.    DISCLAIMERS

THIS DISCLOSURE STATEMENT IS NOT THE PLAN.  THIS DISCLOSURE STATEMENT, TOGETHER WITH THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, SHOULD BE READ COMPLETELY.    FOR THE CONVENIENCE OF CREDITORS, THE PLAN IS SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES AND OTHER STATEMENTS REGARDING THE PLAN ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN ITSELF, WHICH IS CONTROLLING IN THE EVENT OF ANY INCONSISTENCY.  NO REPRESENTATIONS OR ASSURANCES CONCERNING THE DEBTOR, INCLUDING, WITHOUT LIMITATION, ITS OPERATIONS, THE VALUE OF ITS ASSETS, OR THE FUTURE OPERATIONS OF REORGANIZED CENTRALIA, ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  THIS IS A SOLICITATION BY THE DEBTOR ONLY. THE REPRESENTATIONS MADE HEREIN ARE THOSE OF THE DEBTOR AND NOT OF ITS ATTORNEYS OR ANY OTHER PROFESSIONAL.    PORTIONS OF THIS DISCLOSURE STATEMENT DESCRIBING THE DEBTOR'S FINANCIAL CONDITION HAVE NOT BEEN SUBJECTED TO AN INDEPENDENT AUDIT, BUT PREPARED FROM INFORMATION COMPILED BY THE DEBTOR FROM RECORDS MAINTAINED IN THE ORDINARY COURSE OF ITS OPERATIONS.  REASONABLE EFFORTS HAVE BEEN MADE TO ACCURATELY PREPARE ALL FINANCIAL

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 4

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Case 10-50029-BDL    Doc 126    Filed 05/20/11    Entered 05/20/11 12:44:51    Page 9 of 43

INFORMATION WHICH MAY BE CONTAINED IN THIS DISCLOSURE STATEMENT FROM THE INFORMATION AVAILABLE TO THE DEBTOR. HOWEVER, AS TO ALL SUCH FINANCIAL INFORMATION, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ERROR.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.  THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE TO HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTOR.  CREDITORS AND INTEREST HOLDERS SHOULD CONSULT THEIR OWN LEGAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN ON THEM.

### III.    THE DEBTOR'S HISTORY AND BUSINESS BACKGROUND

#### A.    Centralia's Business and Management

Centralia owns real property and improvements and operates an outlet mall thereon commonly known as the Centralia Outlet Mall (the "**Outlet Mall**").  The Outlet Mall, which straddles Interstate 5 in Centralia, Washington, comprises over 186,000 square feet of tenant space and features brand-name outlet stores including Coach, Polo Ralph Lauren, Nike, Eddie Bauer, Aéropostale, Gymboree, Bath & Body Works, Volcom, Billabong, Toys "R" Us and Lane Bryant.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

The day-to-day operations of the Outlet Mall are, and since November 1998 have been, professionally managed by JSH Properties, Inc. (**"JSH"**). JSH is located in Bellevue, Washington, but has an onsite property manager. Centralia also receives services from Sandra Smith and other employees of RK Getty, Inc. (a company owned by Richard Getty, one of the ultimate owners of Centralia), including marketing, lease negotiation, property management assistance, and strategic planning services. The salaries for Sandra Smith and the other individuals are paid by RK Getty, Inc. Centralia reimburses RK Getty, Inc. approximately 50% of the salary expense and other overhead with respect to those employees, which is approximately $8,000 per month. Centralia estimates that the employees of RK Getty, Inc. spend in excess of 50% of their time on Centralia matters. Centralia has no employees.

### B.     Centralia's Ownership

The Outlet Mall is, and has since 1998 been, owned directly or indirectly by two married couples: Richard and Rhonda Getty, who indirectly own seventy percent (70%); and Jerry and Katherine Barnett, who indirectly own thirty percent (30%). Prior to January 31, 2007, when Centralia was formed, the Gettys and Barnetts, or their respective affiliates, owned the Outlet Mall directly. On January 31, 2007, Centralia was formed and ever since has been the owner of the Outlet Mall. From January 31, 2007 until June 2008, the Gettys and Barnetts owned Centralia's membership Interests directly.

In June 2008, the Gettys and the Barnetts each formed a Delaware "series" limited liability company, identified below, and transferred substantial property, including Centralia and the Outlet Mall, to the subparts of the newly formed limited liability companies so that, rather than own numerous business entities directly, each couple would own 100% of a single holding company which, in turn, would own their membership interests in Centralia,

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 6

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

as well as other investments. Centralia's current ownership structure is as follows: (a) the Gettys wholly own Green Global Investments, LLC, (**"Green Global"**), which owns seventy percent (70%) of Centralia's membership interests (as well as interests in other entities formerly directly owned by the Gettys); and (b) the Barnetts wholly own Gladiator Global Investments, LLC (**"Gladiator"**), which owns thirty percent (30%) of Centralia's membership interests (together with other investments formerly directly owned by the Barnetts). As a member-managed limited liability company, Centralia is managed by its majority owner, Green Global, which in turn is managed by Richard Getty.

On July 26, 2010, both the Gettys and the Barnetts commenced Chapter 11 bankruptcy cases by filing voluntary petitions with the Bankruptcy Court, which cases are pending under Case No. 46061 (the "**Getty Case**") and Case No. 46062 (the **"Barnett Case"**), respectively. The transactions described in the preceding paragraphs are explained in more detail in various papers filed with the Bankruptcy Court in those cases.[1]

## C. Renovation of the Outlet Mall

Beginning in March 2006, Centralia undertook a major remodel of the Outlet Mall on both the east and west sides of Interstate 5, giving the property an upscale look and enhancing the shopping experience for customers. The design is in a northwest style featuring stone columns, board-and-batt siding, and gable roofs. Additional upgrades include widened sidewalks, enhanced restroom facilities, lighting, signage, and landscape improvements throughout the Outlet Mall. The improvement in the appearance of the Outlet

---

[1] For example, in the Getty Case, see Declaration of Kent W. Mordy Regarding Prepetition Transfers (Docket No. 181) and Declaration of Richard K. Getty in Support of Debtors' Response in Opposition to Motion for Appointment of Examiner (Docket No. 142).

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 7

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

Mall is dramatic, as can be seen in the before and after photographs available at http://centraliafactoryoutlet.com/renovation/.

The renovations were completed in January 2009 and have had a positive effect on the Outlet Mall's performance. Since construction has been completed, the Outlet Mall's occupancy has increased with the addition of new tenants such as Toys "R" Us and Coach (in addition to other tenants added during the renovation). Centralia recently entered into lease agreements with The Children's Place and Christopher & Banks, which will be opening stores at the Outlet Mall in the next several months. This trend, which Centralia expects to continue, has resulted in increased revenue. Centralia is in the process of negotiating leases with several additional new tenants, which will further improve the Outlet Mall's performance.

### D. Prepetition Indebtedness to Sterling Savings Bank

In February 2007, Centralia executed a promissory note (**"Sterling Note"**) in favor of Intervest-Mortgage Investment Company (**"Intervest"**) in the maximum amount of $30,750,000 (the **"Loan"**). In connection with the Loan, Centralia also executed various other documents, including a Construction Loan Agreement, a Deed of Trust, Assignment of Rents and Security Agreement, and an Assignment of Leases and Cash Collateral (all documents evidencing the Loan are collectively referred to as the **"Sterling Loan Documents"**). The Gettys and Barnetts each executed guarantees in favor of Intervest, by which they guaranteed Centralia's obligations under the Loan.

Sterling asserts that it is now the holder of the Sterling Note and owner of the Sterling Loan Documents by way of assignment from Intervest. Sterling filed a proof of claim, Claim No. 4-1 on the Bankruptcy Court's official claim register, asserting a claim in

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

76262-0001/LEGAL20442205.9

the amount of $24,378,375.23 (which amount Centralia disputes, and to which proof of claim Centralia reserves the right to object).

### E. Events Leading to Bankruptcy Filing

The Sterling Note, which was dated February 13, 2007, had an initial maturity date of March 1, 2010. However, so long as Centralia was not in default under its terms, Centralia had the option of extending the maturity date until September 1, 2010, and again until March 1, 2011.

Centralia exercised its first option and extended the maturity date through September 1, 2010. In July 2010, Centralia notified Sterling that it was exercising its second option to extend the maturity date through March 1, 2011 and paid the requisite fee.

By letter dated August 13, 2010, Sterling declared Centralia in default under the terms of the loan documents, alleging that the Gettys' and Barnetts' (who guaranteed the loan) transfer of substantially all of their assets and all of their equity interests in Centralia was, according to Sterling, a violation of the terms of the Loan. Sterling returned the extension fee to Centralia. Centralia disputes that Centralia was in default under the loan documents or that Sterling was damaged as a result of the alleged defaults.

Based on the transfer by the Gettys and the Barnetts of substantially all of their assets, Sterling refused to recognize Centralia's exercise of its option to extend the maturity date of the Sterling Note through March 1, 2011 and demanded payment of the entire outstanding balance of the loan by September 1, 2010. Although Centralia tendered interest payments to Sterling (which were either returned or refunded), it did not pay the entire balance of the loan by September 1, 2010, or thereafter. On November 19, 2010, Sterling sought appointment of a receiver in the Superior Court of Lewis County, Washington (Case

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

No. 10-2-01616-1).  The Lewis County Superior Court entered an Order appointing a receiver on December 3, 2010.  This bankruptcy case was filed later that same day.

## IV.    THE BANKRUPTCY CASE

### A.    Commencement of Bankruptcy Case.

Centralia commenced this Bankruptcy Case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 3, 2010.  No trustee has been appointed, and the Debtor has continued to manage its property and affairs as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  The office of the United States Trustee has not appointed an official committee of unsecured creditors and has indicated that none will be appointed in this case.

### B.    Funding for Postpetition Operations

Since the commencement of this case, Centralia has timely paid or performed all of its obligations incurred after the Petition Date as they have come due.  The principal source of Centralia's funding has been the revenue generated from the operation of the Outlet Mall, in which Sterling asserts a security interest.  Pursuant to certain Orders of the Court, the most recent of which was entered on May 11, 2011 (Docket No. 115), Centralia is authorized to use cash collateral pursuant budgets for applicable periods, with some variance, through July 29, 2011.

### C.    Debtor's Professionals

Debtor's initial counsel in this case was Bush Strout & Kornfeld LLP ("**BSK**"), which the Bankruptcy Court authorized Debtor to employ on a limited basis by order entered on January 14, 2011 (Docket No. 57).  On January 19, 2011 (Docket No. 59), the Bankruptcy Court entered an order authorizing Debtor's employment of Perkins Coie LLP

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 10

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Case 10-50029-BDL    Doc 126    Filed 05/20/11    Entered 05/20/11 12:44:51    Page 15 of 43

("**Perkins Coie**") as Debtor's general bankruptcy counsel, effective as of and after December 28, 2010.

The payment of fees incurred by BSK, Perkins Coie, and any other professionals that may be employed by the Debtor will be paid from two potential sources: (a) the amount of the Professional Fund in the amount of $150,000 as defined and described in the Bankruptcy Court's order entered on January 4, 2011 (Docket No. 41), of which approximately $116,000 remains before payment of fees and expenses incurred to date by Perkins Coie; and (b) pursuant to the Section 2.2 of the Plan, as described therein and in this Disclosure Statement.

## V. ASSETS AND LIABILITIES; SELECTED FINANCIAL INFORMATION

### A. Assets

Centralia's assets are comprised of current assets and long-term assets. Current assets consist primarily of cash and receivables that are expected to be collected within one year. All other assets, which consist primarily of the Outlet Mall, are included in long term assets. As of April 20, 2011, Centralia had cash in the amount of $531,947[2] and had accounts receivable of approximately $268,465. However, as set forth in the Financial Projections, Centralia anticipates using a portion of its retained cash to fund certain tenant improvements in connection with new tenant leases. Although this will result in a reduction of Centralia's cash balance, the new leases will provide additional revenue going forward.

---

[2] Centralia's monthly operating report for April 2011 identifies cash on hand in the amount of $506,947.41. This is due to Centralia mistakenly making a $25,000 payment to Perkins Coie in April. After learning of this payment, Perkins Coie returned $25,000 to Centralia. Because that occurred after the fiscal month end, the cash balance was understated by $25,000.

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

76262-0001/LEGAL20442205.9

Centralia's primary asset, which is a long-term asset, is the Outlet Mall. Sterling filed a copy of an appraisal in this case valuing the Outlet Mall at $24 million and asserts that its claim may be partially unsecured. Centralia believes that Sterling's appraisal undervalues the Outlet Mall and that Sterling's claim is fully secured.

In addition, Centralia owns certain real property with an aggregate estimated value of $825,000, as described on Schedule A of its Schedules (Docket No. 31), which is not subject to any security interests.

## B. Liabilities

Centralia's most significant liability is the Loan from Sterling, which had a principal balance as of the Petition Date of $23,985,000. Sterling filed a proof of claim in the amount of $24,378,375.23, although Centralia disagrees with certain amounts included therein. Centralia's other liabilities consist primarily of unsecured debt which, as of the Petition Date, totaled approximately $61,000. Centralia paid real property taxes in April 2011 and taxes will not become due again until April 2012.

## C. Selected Financial Information

The following table sets forth Centralia's historical annual revenue for the fiscal year ending December 20, 2010, and the two prior years (which do not include expenses). Centralia's projected revenues are contained in the Financial Projections.

|  | 2010 | 2009 | 2008 |
|---|---|---|---|
| Gross Rent | $2,251,257.00 | $2,068,358.00 | $2,098,291.25 |
| Sign Revenue | $ 9,250.00 | $ 10,095.00 | $ 8,055.00 |
| Vending Revenue | $ 1,943.00 | $ 1,667.50 | $ 1,586.17 |
| CAM Reimbursements | $ 382,737.00 | $ 385,905.06 | $ 338,501.78 |
| Tax Reimbursements | (included in CAM) | (included in CAM) | $ 93,768.32 |
| Insurance Reimbursements | (included in CAM) | (included in CAM) | $ 48,962.31 |
| Advertising Reimbursements | $ 199,924.00 | $ 203,159.53 | $ 237,433.78 |
| Interest Income |  | $ 1,434.51 | $ 4,595.35 |
|  | $2,845,111.00 | $2,670,619.60 | $2,831,193.96 |

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 12

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 10-50029-BDL    Doc 126    Filed 05/20/11    Entered 05/20/11 12:44:51    Page 17 of 43

# VI. DESCRIPTION OF THE PLAN

A discussion of the principal provisions of the Plan is set forth below. The discussion of the Plan that follows is a summary only and is qualified in its entirety by reference to the full text of the Plan itself. You are urged to read the Plan in full and make a thorough review of its terms in evaluating whether to accept or reject the Plan. If any inconsistency exists between the summary herein and the Plan, the terms of the Plan control.

## A. Classification and Treatment of Claims and Interests.

### 1. Classification Generally.

The Plan designates Classes of Claims and Interests for purposes of voting on the Plan and making distributions. All Claims, other than Administrative Claims and Priority Tax Claims, and all Interests are placed in Classes under the Plan. A Claim is classified in a particular Class only to the extent that the Claim falls within the description of that Class and is classified in one or more other Classes to the extent that any remainder of the Claim falls within the description of such other Classes.

### 2. Unclassified Claims

#### a. Administrative Claims

Administrative Claims are claims incurred by the Debtor during the Bankruptcy Case. Each Administrative Claim other than Fee Claims accrued on or before, but unpaid as of, the Effective Date will be paid in full in Cash on the latest of: (i) the Effective Date; (ii) the date on which the Bankruptcy Court enters an order allowing such Administrative Claim; or (iii) the date on which the Debtor or the Reorganized Debtor, as the case may be, and the holder of such Allowed Administrative Claim otherwise agree in writing; provided, however, that Administrative Claims representing indebtedness or other obligations incurred in the ordinary course of business of the Debtor will be paid in the ordinary course of

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 13

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

business and in accordance with any terms and conditions of any agreement or order relating thereto. Centralia is not aware of any administrative claims other than those being paid in the ordinary course of business and claims for professional fees (discussed below).

### b. Professional Fees

Each professional person, whose retention or appointment in the Bankruptcy Cases has been approved by the Bankruptcy Court, and who holds or asserts a Fee Claim, shall file with the Bankruptcy Court and serve on all parties required to receive notice a final fee application within 45 days after the Effective Date. The failure to timely file the fee application as required under Section 2.2 of the Plan will result in the Fee Claim being forever barred and discharged. A Fee Claim with respect to which a fee application has been properly Filed pursuant to Section 2.2 of the Plan will become an Allowed Administrative Claim only to the extent allowed by Final Order. All Allowed Fee Claims shall be paid by the Reorganized Debtor from Cash from operations or through application of any retainer held by such professional person. Perkins Coie currently holds approximately $116,000 in its trust account for the purpose of paying professional fees in this case. It is unclear whether Perkins Coie's fees and expenses, and the fees and expenses of any other professionals, will exceed that amount. If so, the additional amounts will be paid on or after the Effective Date pursuant to the Section 2.2 of the Plan, if confirmed.

### c. Priority Tax Claims

Each holder of an Allowed Priority Tax Claim will be paid the full amount of its Allowed Priority Tax Claim on the Effective Date. Centralia is not aware of any Priority Tax Claims that are due and payable.

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 14

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 10-50029-BDL    Doc 126    Filed 05/20/11    Entered 05/20/11 12:44:51    Page 19 of 43

**B.     Classified Claims**

A creditor will receive a distribution under the Plan only if such creditor is the holder of an Allowed Claim. Distributions under the Plan are in full satisfaction of all Claims. The Plan provides for classification and treatment of all Claims against the estate as follows:

**1.     Class 1.  Priority Claims**

Class 1 is unimpaired. On the latest of: (i) the Effective Date; (ii) ten days after the date a Priority Claim becomes an Allowed Claim; and (iii) the date on which the Debtor or the Reorganized Debtor, as the case may be, and the holder of such Allowed Priority Claim otherwise agree in writing, each holder of an Allowed Priority Claim will be entitled to receive Cash in an amount sufficient to render the Allowed Priority Claim unimpaired under section 1124 of the Bankruptcy Code, in full settlement, release and discharge of such Allowed Priority Claim. Centralia is not aware of any Priority Claims.

**2.     Class 2.  Sterling Secured Claim**

Class 2 is impaired by the Plan and Sterling is entitled to vote on the Plan. Sterling filed a proof of claim in the amount of $24,378,375.23, which it classified as partially secured ($24,000,000) and partially unsecured ($378,375.23). Centralia believes that Sterling's claim is fully secured and should be treated as fully secured. Accordingly, Sterling's entire claim is treated as a secured claim under Class 2 of the Plan.

Sterling shall receive the treatment described in this section on account of the Sterling Allowed Secured Claim:

(a)     On the Effective Date, Reorganized Debtor shall execute and deliver to Sterling the Sterling Replacement Note and the Sterling Replacement Loan Documents. Forms of the Sterling Replacement Loan Documents will be included with the Plan Supplement, which shall be filed no later than ten (10) days prior to the date votes on the

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 15

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Case 10-50029-BDL    Doc 126    Filed 05/20/11    Entered 05/20/11 12:44:51    Page 20 of 43

Plan are due.  The Sterling Replacement Loan Documents will incorporate the terms of, and otherwise be consistent with, the terms of the Plan.

(b)  The principal amount of the Sterling Replacement Note shall be equal to the amount of the Sterling Allowed Secured Claim, which is defined in the Plan to include the current principal balance of $23,985,000 plus interest at the nondefault rate and costs and expenses allowable in accordance with existing loan documents and applicable law.  If Centralia objects to the amount of Sterling's claim, Centralia will continue making payments based on the undisputed amount and, if necessary, make adjustments to later payments after the amount of the claim is determined by agreement of the parties or by Order of the Court.

(c)  Interest shall accrue at the Sterling Interest Rate from the Effective Date until the principal balance is paid in full, but in any event no later than the Sterling Maturity Date (the tenth anniversary of the Effective Date).  The term "Sterling Interest Rate" means 2.256%, which is equal to LIBOR plus 2% (the interest rate under the existing loan documents) fixed as of the Petition Date (rather than variable as under the existing loan documents).  Sterling's claim shall remain secured by the Sterling Collateral.

(d)  The Sterling Loan Documents shall provide that the indebtedness thereunder may be paid prior to the Maturity Date without penalty.

(e)  Reorganized Debtor may assign all of its rights and obligations under the Sterling Replacement Loan Documents to any party that (i) purchases substantially all of Reorganized Debtor's assets and (ii) agrees to assume all obligations under the Sterling Replacement Loan Documents.  Upon assignment of its rights and obligations under the Sterling Replacement Loan Documents, Reorganized Debtor will have no further obligations with respect to the Sterling Allowed Secured Claim.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

(f)      Reorganized Debtor shall make payments under the Sterling Replacement Loan Documents as follows:

> (i)      from the Effective Date until the second anniversary of the Effective Date, monthly payments equal to the Sterling Monthly Interest Amount (which is equal to one-twelfth (1/12) of the product of the principal balance due under the Sterling Replacement Loan Documents and the Sterling Interest Rate of 2.256%);

> (ii)     thereafter until the fifth anniversary of the Effective Date, monthly payments equal to the Sterling Monthly Interest Amount plus $10,000;

> (iii)    thereafter, until the tenth anniversary of the Effective Date, monthly payments equal to the Sterling Monthly Interest Amount plus $15,000; and

> (v)     on the Maturity Date, a payment equal to the remaining balance, if any, under the Sterling Replacement Note, including any accrued interest or other charges.

(g)      The obligations of the Gettys under the Getty Guaranty and of the Barnetts under the Barnett Guaranty, will be determined by the Bankruptcy Court in the Getty Case and the Barnett Case, respectively, or such other forum as the Bankruptcy Court directs. Sterling and Centralia reserve their rights regarding the proper allocation of any payments received by Sterling from the Gettys or Barnetts.

**3.    Class 3.  General Unsecured Claims**

Class 3 is impaired by the Plan and holders of Class 3 claims are entitled to vote on the Plan.  Centralia estimates that Class 3 consists of approximately $61,000 in unsecured claims.  Holders of Class 3 claims shall receive payment of their Allowed Unsecured Claims as follows: (i) one half on the later of the Effective Date and ten (10) after of such claim is

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

allowed, and (ii) one half on the later of sixty (60) days after Effective Date and ten (10) days after such claim is allowed, together with 5% interest from the Effective Date.

**4.    Class 4.  Interests**

Class 4 is unimpaired by the Plan and the holders of the Interests of Debtor shall be deemed to accept the Plan.  Class 4 consists of Green Global, which owns seventy percent (70%) of Debtor's Interests, and Gladiator, which owns thirty percent (30%) of Debtor's Interests.  Green Global and Gladiator shall retain their Interests in Reorganized Debtor.  Reorganized Debtor shall continue to be managed by R. Getty.

**C.    Plan Funding.**

The Plan will be funded by a combination of the Debtor's Cash on hand as of the Effective Date and Cash that is collected or generated by the Reorganized Debtor after the Effective Date.

**D.    Distributions to Creditors.**

The provisions of the Plan that govern distributions to creditors and the resolution of disputed and contingent claims are set forth in Article 7 of the Plan.  Certain of those provisions are summarized below.

**1.    Distributions Generally.**

Distributions under the Plan will be made on the Effective Date and on each Distribution Date, or, in each case, as soon thereafter as is practicable, as more specifically set forth in the Plan.  The record date for distributions will be the date of approval of the Disclosure Statement or any later date established by order of the Bankruptcy Court.  Distributions will be made by the Reorganized Debtor as the disbursing agent for all disbursements required under the Plan.  Withholding taxes and other amounts required to be withheld under applicable law will be deducted from distributions.  All Entities holding

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 18

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Claims shall provide any information necessary to effect the withholding of such taxes. No distribution of less than $20.00 shall be made to the holder of any Allowed Claim and all such Claims are discharged.

**2.      Undeliverable or Unclaimed Distributions.**

For a period of 180 days after any particular distribution is made pursuant to the Plan, distributions that are unclaimed, including (i) checks that have been returned as undeliverable without a proper forwarding address and (ii) checks that were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same, shall be distributed to the holders of Allowed Claims entitled thereto upon presentment to the Reorganized Debtor of satisfactory proof of entitlement. The Reorganized Debtor shall make a reasonable effort to ascertain the correct mailing address from information generally available to the public for each holder of an Allowed Claim whose check or other property cannot be mailed or delivered because of the absence of a proper address or whose check has been returned without a proper forwarding address. On the first day after the expiration of such 180 day period (i) holders of Allowed Claims previously entitled to such undeliverable or unclaimed distribution shall no longer be entitled to such distribution and (ii) such Claims shall be deemed disallowed for all purposed, including any future distributions. Pursuant to Section 347(b) of the Bankruptcy Code, all disbursements made under the Plan that remain unclaimed as set forth herein shall become property of the Reorganized Debtor.

**3.      Time Bar for Cashing Distribution Checks.**

The Reorganized Debtor may (but shall not be obligated to) stop payment on any check issued by it in respect of Allowed Claims if such check is not negotiated within 60 days after the date of issuance thereof. Any request for reissuance of any check shall be

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

made to the Reorganized Debtor in accordance with the Plan, by the holder of the Allowed Claim to whom such check originally was issued, prior to the expiration of the 180 day period set forth in Section 7.8 of the Plan. After such date, the holder of any such Claim who has failed to make a timely request for reissuance of such a voided check shall not be entitled to any other or further distribution under the Plan on account of such voided check or such Claim.

**4.      Limitations on Filing or Amending Claims After the Confirmation Date.**

Except as otherwise provided in the Plan, after the Confirmation Date, a proof of claim may be amended by the holder of such Claim solely to decrease, but not to increase, the amount of such Claim. Except as otherwise provided in the Plan and in the immediately preceding sentence, any proof of claim (whether Filed to assert a new Claim or to amend a previously Filed Claim) Filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Reorganized Debtor.

**5.      Transmittal of Distribution and Notices.**

Any property or notices, including distributions, that an entity is or becomes entitled to receive pursuant to the Plan may be delivered by regular mail, postage prepaid, in an envelope addressed to that entity at the address indicated on a properly Filed proof of claim or, absent such a proof of claim, the address that is listed on either of the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009; provided, however, that a holder of a Claim may designate a different address for notices and distributions by notifying the Reorganized Debtor of a change of address in writing. The new address shall be effective upon receipt by Reorganized Debtor of such notice.

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

76262-0001/LEGAL20442205.9

**6.    Disputed Claims.**

Reorganized Debtor shall assert any objections to Sterling's Claim no later than 60 days after the Effective Date.  With respect to all other Claims, Reorganized Debtor shall have the exclusive right to file objections to the allowance of such Claims and shall assert such objections no later than 120 days after the Effective Date, unless for cause shown the Bankruptcy Court extends such deadline.  No disbursement shall be made on account of a Disputed Claim as to which an objection has been interposed or as to which a counterclaim or setoff has been asserted, unless and until the objection, counterclaim or setoff is finally resolved and such Disputed Claim is Allowed.  Once a Disputed Claim is Allowed, the Reorganized Debtor shall make distributions on such Claim on as set forth in the Plan.

**E.    Executory Contracts and Unexpired Leases.**

Entry of the Confirmation Order will constitute Bankruptcy Court approval of Debtor's (a) assumption, effective as of the Effective Date, of the executory contracts and unexpired leases set forth in the Plan Supplement, which shall be filed at least ten (10) days prior to the date votes on the Plan are due (the "**Assumed Contracts**"), and (b) rejection, effective as of the Effective Date, of (i) the executory contracts and unexpired leases set forth in Plan Supplement and designated for rejection, and (ii) all executory contracts and unexpired leases to which Debtor is a party as of the Confirmation Date that have not yet been assumed or rejected, are not on the schedule of Assumed Contracts and are not the subject of a motion to assume or reject pending as of the Confirmation Date.  Although it reserves the right to reject leases as set forth herein and in the Plan, Centralia anticipates assuming all of its current leases at the Outlet Mall.

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 21

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## VII.    THE REORGANIZED DEBTOR

### A.    Ownership and Management.

**1.    Management.**

The Plan provides that upon the occurrence of the Effective Date, existing ownership and management will remain in place.   Specifically, Centralia will continue to be owned by Green Global and Gladiator in the percentages of seventy percent (70%) and thirty percent (30%), respectively.  R. Getty, as the manager of Green Global, will manage Centralia.  The day to day operations of the Outlet Mall will continue to be handled by JHS (or any successor property manager chosen by Centralia).  Additional services will be performed by Sandra Smith and other employees of RK Getty, Inc. (with Centralia paying a share of the overhead associated with such employees).

### B.    Financial Projections.

Centralia has prepared financial projections for Reorganized Centralia based on the treatment of the various claims under the Plan.   Attached as Exhibit B are financial projections for Reorganized Debtor for the next ten fiscal yearly periods (the "**Projections**"). The Projections are based on a number of assumptions, the more significant of which are included as part of Exhibit B.   As can be seen on Exhibit B, if the Plan is confirmed (including the Sterling Interest Rate and other terms of payment to Sterling), Centralia will generate sufficient cash to fully fund its obligations under the Plan.

## VIII.   VOTING ON THE PLAN

### A.    Voting Eligibility.

In general, a holder of a claim or interest may vote to accept or reject a plan if either (1) the claim or interest is "allowed," which means generally that it is not disputed, contingent or unliquidated in amount, and (2) the claim or interest is part of a class that is

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 22

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Case 10-50029-BDL    Doc 126    Filed 05/20/11    Entered 05/20/11 12:44:51    Page 27 of 43

impaired by the plan. If a creditor or equity interest holder will not receive any distribution under a plan in respect of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan and provides that the holder is not entitled to vote. On the other hand, if the claim or interest is part of a class that is not impaired, the Bankruptcy Code conclusively presumes that holder of such claim or interest has accepted the plan and provides that the holder is not entitled to vote. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless (1) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof, or (2) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan (a) cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy), (b) reinstates the maturity of such claim or interest as it existed before the default, (c) compensates the holder of such claim or interest for any damages resulting from such holder's reasonable reliance on such legal right to an accelerated payment, and (d) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest. Under the Plan, only the holders of allowed claims (or of disputed claims that are temporarily allowed by the Court for voting purposes) are entitled to vote. The holders of Claims in Classes 2, 3, and 5 will be entitled to vote separately as a Class to accept or reject the Plan. The holders of Priority Claims (Class 1) are not impaired and are deemed to have accepted the Plan.

**B.    Voting Deadline.**

The deadline for submitting completed ballots is 5:00 p.m. (prevailing Pacific Time) on **Thursday, June 23, 2011** (the "**Voting Deadline**"). Only those ballots that are actually received by the Voting Deadline will be counted as either accepting or rejecting the Plan.

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 23

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### C.    Acceptance by a Class of Claims.

Consistent with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.  If creditors in a Class (i) fail to vote to either accept or reject the Plan and (ii) fail to object to the Plan, such Class shall be deemed to accept the Plan.

### D.    Voting Procedures.

**1.    Submission of Ballots.**

A form of ballot is included among the materials that accompany this Disclosure Statement.  All votes to accept or reject the Plan must be cast by properly submitting a duly completed and executed ballot.   Ballots must be delivered to the Debtor' counsel as designated in the ballot at the address or fax number set forth on the ballot and must be received by the Voting Deadline.  The method of delivery of a ballot is at the election and risk of the voting creditor.  Please carefully follow the directions contained on the enclosed ballot.

**2.    Incomplete Ballots.**

Any ballot received that (i) is not signed, (ii) does not contain sufficient information to permit the identification of the claimant, or (iii) does not indicate either an acceptance or rejection of the Plan or which indicates both acceptance and rejection of the Plan will be invalid and will not be counted as a vote cast with respect to the Plan.

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 24

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**3.    Withdrawal or Change of Votes.**

A ballot may be withdrawn by delivering a written notice of withdrawal to the Debtor' counsel at any time prior to the Voting Deadline.  Thereafter, a withdrawn ballot will not be effective unless approved by the Bankruptcy Court.  In order to be valid, a notice of withdrawal must (i) specify the name of the holder who submitted the vote on the Plan to be withdrawn, (ii) contain a description of the Claim to which it relates and (iii) be signed by the holder in the same manner as on the ballot.  The Debtor expressively reserves the absolute right to contest the validity of any such withdrawals of votes on the Plan.  Any creditor who has submitted to the Debtor' counsel a properly completed ballot prior to the Voting Deadline may change such vote by submitting to the Debtor' counsel prior to the Voting Deadline a subsequent properly completed ballot.  In the case where more than one timely, properly completed ballot is received with respect to the same Claim, the ballot that bears the latest date will be counted.

**4.    Voting Multiple Claims.**

Only one form of ballot is provided for voting.  Any creditor that holds a Claim in more than one Class is required to vote separately with respect to each Class.  Creditors with multiple Claims in the same Class shall have one Claim for voting and distribution purposes and all such amounts will be aggregated into one Claim and such creditor shall be entitled to submit only one ballot.  Please sign, and return in accordance with the instructions on the ballot form, a separate ballot with respect to each such Claim.

## IX.    CONFIRMATION OF THE PLAN

### A.    Confirmation Hearing.

The Bankruptcy Court will hold a hearing to consider confirmation of the Plan commencing on **July 1, 2011, at 9:00 a.m.** (prevailing Pacific Time) in the United States

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 25

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Bankruptcy Court for the Western District of Washington Union Station, 1717 Pacific Avenue, Tacoma, Washington 98402, Courtroom I. The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date and time made at the confirmation hearing.

### B. Deadline for Objecting to Confirmation.

Any objection to confirmation of the Plan must be in writing, must state with specificity the grounds for any such objections, and must be filed with the Bankruptcy Court on or before **June 23, 2011** at **5:00 p.m.**

### C. Requirements for Confirmation.

**1. Confirmation Requirements Generally.**

The Bankruptcy Court can confirm the Plan only if all the requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation are that (i) the plan be accepted by all impaired classes of claims and of interests or, if rejected by an impaired class, the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (ii) the plan is feasible, and (iii) the plan is in the "best interest" of creditors and stockholders that are impaired under the plan.

**2. Feasibility.**

In connection with confirmation with the Plan, the Bankruptcy Court will have to determine that the confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor unless such liquidation or reorganization is proposed in the Plan. Centralia believes that Reorganized Centralia will be able to perform its obligations under the Plan.

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 26

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### 3.  Best Interests of Creditors.

Section 1129(a)(7) of the Bankruptcy Code requires that any holder of a claim or interest in an impaired class that votes against a proposed plan must receive under the plan distributions that have a value, as of the effective date of the plan, at least equal to that which the holder would receive if the debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code. To determine what creditors and Interest holders would receive if a debtor were liquidated, the Bankruptcy Court must determine the dollar amount that would be generated from a liquidation of its assets in the context of a hypothetical liquidation. Such determination must take into account the fact that, as to each asset, all claims secured by that asset would have to be paid in full, as would all administrative expenses in the Chapter 7 case and in the original Bankruptcy Case, before the balance of those proceeds would be made available to pay unsecured creditors and interest holders. To determine if a plan is in the best interest of each impaired class, the present value of the distributions from the proceeds of the hypothetical liquidation of the assets (after subtracting the amount attributable to secured claims and administrative expenses of the bankruptcy case) must be compared with the present value of the consideration offered to each such class under the plan. In addition, the rule of absolute priority of distribution from a debtor's estate must be applied. Under that rule, no junior holder of a claim or equity interest may receive distributions under a plan unless the plan provides that all senior classes will be paid in full or unless all senior classes vote to accept the plan. After consideration of the effect that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to the debtor's creditors and interest holders (including (i) the increased cost and expense of liquidation under Chapter 7 arising from fees payable to a Chapter 7 trustee and the attorneys and other professional advisors to such trustee, (ii) the time value of money

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 27

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

resulting from what is likely a more protracted proceeding, and (iii) the application of the rule of absolute priority to distributions in a Chapter 7 case), the Debtor has determined that confirmation of the Plan will provide each creditor in an impaired Class with a greater recovery than such creditor would receive in a Chapter 7 case concerning the Debtor.

As set forth on the liquidation analysis attached as <u>Exhibit C</u>, all creditors will receive as much or more under the Plan than they would receive in a Chapter 7 liquidation.

### D.      Confirmation Over Objections of Dissenting Class.

The Bankruptcy Code permits confirmation of a plan even if it is not accepted by all impaired classes, as long as (a) the plan otherwise satisfies the requirements for confirmation, (b) at least one impaired class of claims has accepted it without taking into consideration the votes of any insiders in such class, and (c) the plan is "fair and equitable" and does not "discriminate unfairly" as to any impaired class that has not accepted the plan. These so-called "cramdown" provisions are set forth in section 1129(b) of the Bankruptcy Code.

**1.    Fair and Equitable.**

The Bankruptcy Code establishes different "cramdown" tests for determining whether a plan is "fair and equitable" to dissenting impaired classes of secured creditors, unsecured creditors, and equity interest holders as follows:

**a.    Secured Creditors.**

A plan is fair and equitable to a class of secured claims that rejects the plan if the plan provides: (a) that each holder of a secured claim included in the rejecting class (i) retains the lien securing its claim to the extent of the allowed amount of such claim, whether the property subject to that lien is retained by the debtor or transferred to another entity, and (ii) receives on account of its secured claim deferred cash payments having a present value,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

as of the effective date of the plan, at least equal to such holder's interest in the estate's interest in such property; (b) that each of the holders of the secured claims included in the rejecting class realizes the "indubitable equivalent" of its allowed secured claim; or (c) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of such liens with such liens to attach to the proceeds of sale, and the treatment of such liens on proceeds in accordance with clause (a) or (b) of this paragraph. Centralia believes that the Plan provides Sterling the treatment required under clause (a) and is therefore fair and equitable to Sterling.

### b. Unsecured Creditors.

A plan is fair and equitable as to a class of unsecured claims that rejects the plan if the plan provides that: (a) each holder of a claim included in the rejecting class receives or retains under the plan property of a value, as of the effective date of the plan, equal to the amount of its allowed claim; or (b) the holders of claims and interests that are junior to the claims of the rejecting class will not receive or retain any property under the plan. Unsecured creditors will receive payment in full on their claims, so the Plan is fair and equitable as to unsecured creditors.

### c. Holders of Interests.

A plan is fair and equitable as to a class of interests that rejects the plan if the plan provides that: (a) each holder of an equity interest included in the rejecting class receives or retains under the plan property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of (i) any fixed liquidation preference to which such holder is entitled, (ii) the fixed redemption price to which such holder is entitled, or (iii) the value of the interest; or (b) the holder of any interest that is junior to the interests of the rejecting

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

class will not receive or retain any property under the plan. There is no junior class, and therefore no junior interest will be receiving or retaining any property under the Plan.

Therefore, the Debtor believes that the Plan and the treatment of all impaired Classes under the Plan satisfy the foregoing requirements for nonconsensual confirmation of the Plan.

## 2. Unfair Discrimination.

A plan of reorganization does not "discriminate unfairly" if a dissenting class is treated substantially equally with respect to other classes similarly situated and no class receives more than it is legally entitled to receive for its claims or interests. The Debtor believes that the Plan does not discriminate unfairly against any impaired Class.

### E.     Effects of Confirmation.

## 1. Effect of Appeals

On the Effective Date, pursuant to section 1141(a) of the Bankruptcy Code, the provisions of the Plan shall bind the Debtor, the Reorganized Debtor, all Creditors and all holders of Interests, including each of their respective heirs, legal representatives, successors and assigns, whether or not they accept the Plan.

## 2. Revesting of Estate Property.

As of the Effective Date, pursuant to sections 1123(a)(5) and 1141 of the Bankruptcy Code, the Reorganized Debtor shall be revested with title to all property of its estate, free and clear of all liens, Claims and interests, except to the extent provided in the Plan or in the Confirmation Order. As of the Effective Date, the Reorganized Debtor may use and dispose and otherwise deal with such property and may conduct their affairs, in each case, without supervision of the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 30

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

**3. Discharge.**

Except, as otherwise provided in the Plan or in the Confirmation Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, Debtor and Reorganized Debtor shall be discharged from all liability on any and all Claims against Debtor that arose at any time before the Effective Date.

**4. Exculpation.**

Neither the Debtor, nor any of its officers, directors, members, representatives or agents who served as such during this Bankruptcy Case, shall have or incur any liability to any Entity for any act or omission in connection with or arising out of the negotiation of the Plan, the pursuit of confirmation of the Plan, the pursuit of approval of the Disclosure Statement, the consummation of the Plan, the transactions contemplated and effectuated by the Plan, the administration of the Plan or any other act or omission during the administration of this Bankruptcy Case or the Debtor's estate. Notwithstanding the foregoing, Claims arising from gross negligence or willful misconduct on behalf of the Debtor are not waived or released in any manner by the Plan. In all respects, the Debtor will be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan.

**5. Effect on Insurance Policies.**

Notwithstanding anything to the contrary contained elsewhere in the Plan, including any provision that purports to be preemptory or supervening, the respective rights, obligations and defenses of the insured and insurer under each insurance policy issued to the Debtor or under the agreements related to such policies shall be unaffected by the Plan. Any

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

and all Claims of the insurers that issued such policies before the Petition Date, whether such Claims arise under the policy documents or otherwise, shall be classified and treated as Class 3 Claims.

**6.    Injunction.**

Except as otherwise provided herein, from and after the Effective Date, all holders of Claims shall be permanently enjoined from commencing or continuing in any manner, any suit, action or other proceeding, on account of any Claim, interest, obligation, debt, right, cause of action, remedy or liability released or to be released pursuant to the Plan against the Debtor, the Reorganized Debtor, or their property, including any claims they may have against any asset of the Debtor's estate which are subject to administration to pay Claims.

## X.    ALTERNATIVES TO THE PLAN

Centralia believes that the Plan affords creditors the greatest opportunity for realization on their claims.  The Debtor also believes that the Plan is fair and reasonable in its treatment of all constituencies.  Possible alternatives to the Plan which might arise if the Plan is rejected or if the Court refuses to confirm the Plan include (i) dismissal of the Bankruptcy Case; (ii) conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, which would entail the mandatory appointment of a trustee; (iii) submission by the Debtor of an alternative plan or the filing by another party in interest of an alternative or competing plan; and (iv) the appointment of a Chapter 11 trustee for the purpose of operating the Debtor's businesses, administering the Debtor's assets, and filing an alternative plan.

## XI.    RISK FACTORS

This Disclosure Statement contains forward-looking statements that involve risks and uncertainties.  The following discussion is intended to be a non-exclusive summary of

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 32

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

certain of those risks and uncertainties. Creditors should consider carefully these risks and are encouraged to supplement this summary with their own analysis and evaluation of the Plan.

Reorganized Debtor's Projections contemplate continuing to lease space at the Outlet Mall during the ten (10) year term of the Plan based on certain assumptions, including assumptions regarding occupancy levels and lease rates. Projections are, by definition, uncertain and there it is possible that the Outlet Mall's performance could vary significantly, for better or for worse, over the applicable ten (10) year period. Centralia believes it will be able to fund its obligations under the Plan even if its actual performance falls short of the Projections. However, if Centralia's performance declines significantly, there is a risk that it would be unable to fully fund its obligations to Sterling.

In addition, Centralia's business plan contemplates paying Sterling interest and a portion of principal over a ten (10) year period while, at the same time, seeking replacement financing or possibly selling the Outlet Mall. While Centralia believes that it will be able to refinance or sell the Outlet Mall within that period, those results cannot be guaranteed. Therefore, it is possible that Centralia will remain obligated under the Sterling Replacement Note when it matures and that Centralia will be unable to repay Sterling in full at that time. This risk is mitigated, however, by the fact that Sterling would continue to have a lien on the same forms of collateral in which it had a lien prior to the Petition Date.

## XII. FEDERAL TAX CONSEQUENCES OF THE PLAN

**CIRCULAR 230 NOTICE: WE MUST INFORM YOU THAT TO ENSURE COMPLIANCE WITH THE REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, ANY FEDERAL TAX ADVICE CONTAINED IN THIS DOCUMENT RELATING TO FEDERAL TAXES, WAS NOT INTENDED OR**

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 33

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**WRITTEN TO BE USED OR RELIED UPON, AND IT CANNOT BE USED OR RELIED UPON, FOR THE PURPOSE OF AVOIDING TAX RELATED PENALTIES THAT MAY BE IMPOSED UNDER FEDERAL TAX LAW. UNDER THESE RULES, A TAXPAYER MAY RELY ON PROFESSIONAL ADVICE TO AVOID FEDERAL TAX PENALTIES ONLY IF THAT ADVICE IS REFLECTED IN A COMPREHENSIVE TAX OPINION THAT CONFORMS TO STRINGENT REQUIREMENTS UNDER FEDERAL LAW. THIS DISCUSSION WAS WRITTEN IN CONNECTION WITH THE DEBTOR SOLICITING ACCEPTANCES OF THE PLAN THROUGH THIS DISCLOSURE STATEMENT.**

### A.      Scope of Discussion.

The following discussion summarizes in general terms certain material federal income tax consequences of the implementation of the Plan based upon existing provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), court decisions, and current administrative rulings and practice. This summary does not address the federal income tax consequences of the Plan to holders of priority claims or of secured claims, nor does it address any state, local or foreign tax matters or the federal income tax consequences to certain types of creditors (including financial institutions, life insurance companies, tax exempt organizations and foreign taxpayers) to which special rules may apply. No rulings or opinions have been or will be requested from the Internal Revenue Service with respect to any of the tax aspects of the Plan. The Debtor is not making any representations regarding the particular tax consequences of confirmation and consummation of the Plan as to creditors or Interest holders, nor the Debtor or its professionals rendering any form of legal opinion or tax advice as to such tax consequences. The tax laws applicable to corporations in bankruptcy are complex and are subject to

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 34

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

76262-0001/LEGAL20442205.9

significant uncertainties.  Each creditor and Interest holder is urged to consult his, her or its own tax advisor as to the consequences of the Plan under federal and applicable state, local and foreign tax laws.  Accordingly, the following summary of federal income tax consequences of the Plan is for informational purposes only and should not be construed as tax advice.

### B.    Tax Consequences to Centralia and its Members

Centralia is a limited liability company that is treated as a partnership under the Internal Revenue Code.  As such, Centralia is not subject to federal income tax.  Instead, Centralia's members, are subject to federal income tax on income (and, subject to certain limitations, may deduct losses) generated by Centralia.  Centralia contemplates making quarterly distributions to its members, Green Global and Gladiator, in amounts necessary to fund their expected tax obligations (although distributions to Green Global and Gladiator under the Plan are not restricted to this purpose).  Although it is not possible to calculate future tax liability, the tax obligations can be estimated for general purposes by multiplying (a) net operating income less debt service (and any other nonoperating expenses that may be deducted) by (b) the applicable tax rate (approximately 40%).

In general, absent an exception, a debtor will recognize cancellation of debt ("**COD**") income upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness.  The amount of COD income, in general, is the excess of (a) the adjusted issue price of the indebtedness satisfied, over (b) the sum of (x) the amount of cash paid, (y) the issue price of any new debt instrument issued in satisfaction of such indebtedness, and (z) the fair market value of any other new consideration given in satisfaction of such indebtedness.  Although an exception to COD tax liability exists with respect to certain taxpayers that are debtors under Chapter 11 of the Bankruptcy Code, that

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 35

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

exception will not apply to Centralia because it is an entity treated as a partnership for federal income tax purposes. The amount of COD income allocable to Centralia's members will depend on the application of the factors set forth above. If the Plan is confirmed, there likely will be no COD income because no debt is being cancelled.

### C.    Tax Consequences to Holders of General Unsecured Claims

Pursuant to the Plan, holders of Allowed Unsecured Claims will receive one or more Cash distributions in full satisfaction of their Claims. In connection with the implementation of the Plan, each holder of an Allowed Unsecured Claim generally will recognize gain or loss for federal income tax purposes based on the application of a number of factors, including whether the holder reports income as an accrual basis taxpayer or as a cash basis taxpayer, whether the holder has written off or written down the obligation being satisfied, whether the holder will receive multiple distributions pursuant to the Plan and whether the Reorganized Debtor's obligation to make payments will be treated as a new debt obligation for federal income purposes. Because all creditors are being paid in full under the Plan, there likely will be no gain or loss incurred by creditors unless they have written off or down their claims.

In addition, the character of any gain or loss recognized by a creditor as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the creditor, whether the obligation from which the creditor's claim arose constitutes a capital asset in the hands of the creditor, whether the obligation from which the claim arose has been held for more than one year, the allocation of any distributions received between principal and unpaid accrued interest, whether and to what extent the creditor has previously claimed a bad debt deduction, and the extent (if any) to which interest may be imputed where multiple distributions are received.

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION DATED MAY 20, 2011 – 36

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

76262-0001/LEGAL20442205.9

Because each creditor's circumstances may be different, each creditor is urged to consult his, her or its own tax advisor regarding the specific federal income tax consequences to that creditor of implementation of the Plan.

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 37

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

76262-0001/LEGAL20442205.9

Case 10-50029-BDL    Doc 126    Filed 05/20/11    Entered 05/20/11 12:44:51    Page 42 of 43

## XIII.  CONCLUSION AND RECOMMENDATION

The Debtor believes that confirmation and implementation of the Plan is preferable to any alternative because it will provide the greatest recoveries to their creditors.  For this reason, the Debtor urges all creditors entitled to vote to accept the Plan.

DATED:  May 20, 2011

**PERKINS COIE LLP**

By: /s/ _Brian A. Jennings_____
    Alan D. Smith, WSBA No. 24964
    ADSmith@perkinscoie.com
    Brian A. Jennings, WSBA No. 32509
    BJennings@perkinscoie.com
    1201 Third Avenue, Suite 4800
    Seattle, Washington 98101-3099
    Telephone:  206.359.8000
    Facsimile:  206.359.9000

Attorneys for Debtor
Centralia Outlets, LLC

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION DATED MAY 20, 2011 – 38

76262-0001/LEGAL20442205.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Case 10-50029-BDL    Doc 126    Filed 05/20/11    Entered 05/20/11 12:44:51    Page 43 of 43